## CASTLEBERRY v. BUSSEY et ux.

(Court of Civil Appeals of Texas. Texarkana. March 25, 1914. Rehearing Denied April 9, 1914.)

1. APPEAL AND ERROR (§ 547*) — RECORD — MATTERS PRESENTED FOR REVIEW.

Where, in trespass to try title, the case was submitted upon special issues, and the court also made and filed findings of fact, the findings of the jury and of the court were conclusive on appeal, in the absence of a statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2427, 2429–2432; Dec. Dig. § 547.*]

2. COMPROMISE AND SETTLEMENT (§ 17*)—OPERATION AND EFFECT.

Where, in a suit for the title and possession of land involving a controversy as to whether defendant was an innocent purchaser for value, one of the heirs of the deceased defendant, with authority from the other heirs, entered into an agreement with plaintiff for the settlement of the controversy, and all of the heirs acquiesced therein, took the benefits thereof, and went into possession of the land which they thereby acquired, they were estopped by such agreement, whether or not the agreed judgment settling the action was valid.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 66–74; Dec. Dig. § 17.*]

3. JUDGMENT (§ 651*)—CONCLUSIVENESS—PERSONS INCLUDED—CONSENT JUDGMENT.

Where the heirs of a deceased defendant, in an action involving the title to land, entered into an agreement settling the controversy, and the administrator merely formally agreed to a judgment pursuant thereto, the heirs were bound by the judgment, even though the administrator had no power to enter an agreed judgment; there being no necessity for administration.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1163; Dec. Dig. § 651.*]

4. DEPOSITIONS (§ 99*)—ADMISSIBILITY IN EVIDENCE—ADMISSIBILITY IN OTHER SUITS.

A deposition taken in a suit was not admissible in evidence in a suit other than the one in which it was taken.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 288–296; Dec. Dig. § 99.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

The erroneous admission of evidence was not ground for reversal, where any finding of fact or conclusion of law based thereon was

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

only incidental and entirely immaterial to the legal rights of the parties.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Shelby County; W. C. Buford, Judge.

Action by W. A. Castleberry against J. B. Bussey and wife. From a judgment for defendants, plaintiff appeals. Affirmed.

J. M. Sanders and J. P. Anderson, both of Center, and Oliver J. Todd, of Beaumont, for appellant. D. M. Short & Son and Davis, Davis & Davis, all of Center, for appellees.

LEVY, J. This is an action by appellant against Mrs. F. R. Bussey and her husband, J. B. Bussey, in trespass to try title to a certain described tract of 1,500 acres of land out of the B. H. Simpson original survey located in Shelby county. The defendants answered by denial, plea of not guilty, and the statutes of limitation of three and five years, and ten years, under written memoranda specifying the boundaries. There was a judgment in favor of the defendants.

[1] The case was submitted to the jury upon special issues. In addition to the special facts found by the jury, the court made and filed findings of fact and conclusions of law. There being no statement of facts brought up with the record, the findings of fact made by the jury and the findings made and filed by the court must be taken as the facts of the case. It is needless to copy all the findings here, and the same may be looked to if necessary. We conclude that the real issues involved in the controversy are few, and undertake to state only the findings of the jury and of the court deemed pertinent and conclusive of the rights of the parties.

The principal contention under the many assignments is that, under the findings of the jury and the evidence, the plaintiff was entitled, as a matter of law, to a judgment for the land sued for, and the decision of this question determines the appeal. It appears that on July 9, 1841, a patent to a league and labor of land was issued in the name of B. H. Simpson. As found by the jury, B. H. Simpson conveyed his interest in the land to James J. Cravens. The date of the conveyance is not given, but the court finds that James J. Cravens entered into possession of the land about May, 1841, and that date, or thereabout, may reasonably be the date of the conveyance. James J. Cravens died in 1860, leaving a wife and one child, named William J. Cravens. The wife died within a few days after the death of the husband, and the child died in a few days after the death of the mother. James J. Cravens left a large community estate in lands, and the inheritance in respect thereto, by reason of the death of the wife and child, was cast upon collateral kindred, consisting of two broth-ers and one sister of Mrs. Cravens, and one brother and one sister of James J. Cravens. J. A. and L. C. Cunningham ·and Sarah A. Castleberry, mother of the appellant, were the brothers and sister of Mrs. Mary A. Cravens, and Wm. Cravens and Mary Choate were the brother and sister of James J. Cravens. The plaintiff deraigns title through the patent to B. H. Simpson and conveyance by Simpson to James J. Cravens, and in virtue of his own heirship and conveyances to him from the other heirs of the Cravenses, and plaintiff would be entitled to recover on this prima facie title in him, unless defeated by the other findings of fact. The court finds that on March 22, 1838, Matthew Brinson had a regular survey made of 1,700 acres under the Soose Rohus certificate; the same being a valid certificate and the property of Brinson. Under and by virtue of this location, Brinson continued to reside upon the land, cultivating several hundred acres, until his death in 1861. It is further found by the court that, after Matthew Brinson had located and appropriated the 1,700 acres under and by virtue of the Rohus certificate, B. H. Simpson made application for and received from the board of land commissioners of the republic of Texas a certificate for a league and labor of land. But, as found by the jury, B. H. Simpson, prior to October 16, 1841, the date not given, sold this certificate to J. A. and L. C. Cunningham. J. A. and L. C. Cunningham, after purchase of the certificate, then located this certificate on land the field notes of which covered and included the 1,700 acres located and appropriated by Matthew Brinson, thereby creating a conflict to the extent of 1,700 acres between their location and Brinson's under the Rohus certificate, and it was under this existing condition that on July 9, 1841, a patent was issued in the name of B. H. Simpson, the field notes of which cover the 1,700 acres under the Brinson location. After the issuance of the patent, and on October 16, 1841, B. H. Simpson filed suit against A. McLemore, a brother-in-law and the tenant of Brinson, for the recovery of the 1,700 acres in conflict with the Simpson survey, and Matthew Brinson intervened ·and made himself a party to the suit, and asserted ownership by virtue of his location. Upon verdict of a jury, the court finds, judgment in that suit was rendered in favor of Matthew Brinson, establishing "ownership of the 1,700 acres in Matthew Brinson." And, on appeal of the case to the Supreme Court, the judgment was affirmed. And the jury made the finding that J. A. and L. C. Cunningham, after they purchased the certificate and located the land, never made conveyance to James J. Cravens of the land in controversy. In 1841, under deed from B. H. Simpson, James J. Cravens with his wife began residing upon a part of the land in conflict, at a point about 600 yards north of the residence of Brinson, claiming that the Simp-

son survey was in conflict with the Rohus survey. On May 12, 1843, Matthew Brinson filed suit in the district court of Shelby county against James J. Cravens for the title and possession of the 1,700 acres within the boundaries of the Rohus certificate. The suit remained on the docket of the court undisposed of until April 17, 1857, on which date it was legally transferred to the district court of Panola county, where it remained until June 8, 1872, when a final agreed judgment disposing of the controversy was entered. At the time the agreed judgment was entered A. McLemore, independent executor under the probated will of Matthew Brinson, was the plaintiff in the case in the place of Matthew Brinson, deceased, and D. S. Cornaham, administrator of the estate of James J. Cravens, was the party defendant in the place of James J. Cravens, deceased. The court finds that no necessity existed for the appointment of an administrator of the estate of James J. Cravens, and by this is understood that the estate owed no debts. The agreed judgment in the case was, as found both by the court and the jury, but a formal act based upon and carrying into effect a written agreement respecting a settlement of the controversy, in fact, entered into between William Cravens, acting under and by authority of all the heirs of each, James J. Cravens, Mary, his wife, and William J. Cravens, the boy, and A. McLemore, independent executor of Matthew Brinson. The jury made the express finding that William Cravens had authority to act for all the heirs of William J. Cravens, deceased, at the time he made the written agreement the judgment was based on and carried into effect, and that all the heirs had actual notice of the agreement, and agreed to and received the benefits arising from the agreement, and recognized the rights accorded thereunder to each and all the parties interested. The court made the finding that the agreed judgment was, in fact, based upon and carried into effect a written agreement, of the date of the judgment, between William Cravens and A. McLemore, independent executor under the probated will of Matthew Brinson, deceased, plaintiff in the suit. His further finding in respect to the agreement of June 6, 1872, is as follows: "The matters in difference between the respective parties in interest were legally adjusted and settled, by a valid agreement, through authorized representatives, by the terms of which the persons representing the Cravenses acquired in a lawful way 800 acres of the said conflict, while Brinson retained the balance of the 1,700 acres, after deducting the 800 acres in the conflict, and, in exchange for the 800 acres which Cravens acquired, Brinson acquired from Cravens 600 acres which was not within the conflict, but a part of the Simpson survey (and which, with the 900 acres, constitutes the 1,500 acres mentioned in this suit), and Brinson's representatives were required to float the Rohus certificate off of said location, which requirement was complied with, and the cloud created by the conflict between the Simpson and Rohus location upon the title to that portion of the conflict which James J. Cravens in his lifetime occupied as a home, and which his brother William Cravens after his death occupied as a home and claimed as his own property, was thereby removed, each party being placed in actual possession of the respective portions of said land at the time the agreement was made, and the rights of each thereunder were respected during the lifetime of the parties thereto, until the bringing of this suit on January 12, 1912, more than 20 years after all the parties to said agreement had died." On February 22, 1879, A. McLemore, independent executor of Matthew Brinson, conveyed the 1,500 acres in suit to M. H. Cozart for a valuable consideration, and on March 12, 1881, Cozart conveyed for a valuable consideration the same land to defendants in this suit. The defendants have been paying taxes regularly on the land since that purchase under the claim thus acquired, without interference or molestation from any one.

[2, 3] It is believed that, under these facts found by the jury and the court, the court properly entered judgment for the defendants. Claiming the land in controversy, as plaintiff is, only under the rights which James J. Cravens asserted in his lifetime, he must depend for recovery in right of such legal rights as Cravens had and that would pass to his heirs. If force be given, as it must, to the finding of the court that, in the suit by B. H. Simpson, the patentee, against A. McLemore, Matthew Brinson intervened and set up his right of prior location and appropriation of the land, and was affirmatively decreed the ownership against Simpson of the 1,700 acres, there was then legally vested title to the land in Brinson as against Simpson. But, Simpson having conveyed the land to James J. Cravens, who was not a party to the suit, such judgment would not conclude any rights of Cravens. So the principal controversy between Cravens and Brinson in the suit filed by Brinson against Cravens was the superiority of title between them, and the rights of Cravens in the suit would depend upon the question of whether or not he was an innocent purchaser for value, in view of the facts that might or might not show at the time of the conveyance to him that he had knowledge of the pendency of the litigation and of the prior location of his certificate by Brinson, and whether or not he knew Simpson and sold his certificate before location to J. A. and L. C. Cunningham. So, considering the legal situation in regard to the controversy involved in the suit between Brinson and Cravens, the written agreement between the heirs of Cravens in settling the controversy in 1872 can be considered. The agreement, being in writing, and made by one of the heirs, with the actual notice and

by the authority of all the heirs, and all the heirs acquiescing and taking the benefits and going into possession, would sufficiently afford ground for estoppel against plaintiff's claiming the land. The court's finding that the agreement in writing was a "valid agreement" and the terms sufficient to legally adjust and settle the difference between the parties is reasonably to be interpreted as showing a written agreement capable of being legally and specifically enforced between the parties. And, being capable of specific performance, the instrument itself would be sufficient, coupled with the acts of the parties in respect thereto, to base estoppel upon. The defendants offered the instrument in evidence, as appears in the questions propounded to the jury. So, even if it could be said as an abstract question, that an administrator has not power to enter an agreed judgment, such question would not be pertinent to the rights of the parties here, for the written agreement, outside the formal judgment, is offered and can be made, as it is, the basis of estoppel. But, properly construing the facts found by the jury and the court, it does not fairly appear that the administrator himself was the one that made the agreement the judgment was based on and carried into formal effect. The heirs made the agreement, and the administrator, so far as the judgment entry goes, merely formally agreed thereto. And, in such circumstances, if the heirs appeared in the suit by a written agreement and consented to a judgment on such written agreement and carrying it into effect, as they did, there appears no legal reason why they should not be estopped from denying the legal effect of the agreed judgment instigated and produced by them. There appears no disability to the heirs at the time, and there were no creditors interested in the estate, as is the effect of the court's finding. These material facts are decisive of the case. Many of the other findings made by the jury are entirely immaterial to any issue in the case.

[4, 5] The first and second assignments predicate error upon matters presented by bill of exception. The bill recites that defendants offered in evidence, as direct evidence of the facts therein stated, a deposition taken in said cause, filed in 1841, of Simpson v. McLemore, in which Simpson testified that, prior to the filing of said suit, he had sold all of his interest in the land to, and that he had been induced to bring the suit by, James J. Cravens, and that Cravens had agreed to hold witness harmless of all costs. It was error to admit the deposition. Bank v. Mulkey, 94 Tex. 395, 60 S. W. 753. But the error would not afford ground to reverse the case, as any finding of fact in respect to such evidence would not be material in this case, and is not considered in this appeal. And, even if the trial court did make a con-

clusion of law having application to such evidence, such conclusion of law was only incidental, and was not the only conclusion of law that he based his judgment upon, and was entirely immaterial to any real legal rights of the parties herein. Appellant was estopped by the written agreement of his ancestors, and that is the only and conclusive defense in the suit.

By the ruling above we have disposed of all the assignments that could be reviewed without a statement of facts.

The judgment is affirmed.