In re Howard J. WEISS, Debtor.

Charles Nissan, Leo Abramovich, Herbert Schneider, Menachem Darwish, and Ammon Gillad, Plaintiffs,

v.

Howard J. Weiss, Defendant.

Bankruptcy No. 98–B–40935 (JHG).
Adversary No. 98–9131A.

United States Bankruptcy Court,
S.D. New York.

June 23, 1999.

Forchelli, Schwartz, Mineo, Carlino & Cohn, LLP, Mineola, New York, by Matthew G. Roseman, for plaintiffs.

Charles R. Cuneo, Bayside, New York, for defendant.

## DECISION AFTER TRIAL

JEFFRY H. GALLET, Bankruptcy Judge.

## INTRODUCTION

Charles Nissan, Leo Abramovich, Herbert Schneider, Menachem Darwish and Ammon Gillad (the "Plaintiffs") brought this adversary proceeding against Howard J. Weiss (the "Debtor"), pursuant to § 523(a)(2)(A) and (a)(4) of the United States Bankruptcy Code (the "Code") in order to contest the dischargeability of a Texas judgment debt on the grounds that the debt resulted from the Debtor's fraud and a breach of his fiduciary duties.[1] The Debtor defended on the grounds that the question of whether or not the Debtor had committed fraud was not fully and fairly litigated in the Texas action and therefore was not entitled to full faith and credit in

this Court. For the reasons set forth below, the Plaintiffs' prayer for relief is GRANTED in part and DENIED in part.

## PROCEDURAL HISTORY

In 1991, the Plaintiffs and two other entities commenced an action in the District Court of Harris County, Texas, 333rd Judicial District (the "Texas Action"), against the Debtor and Dov Avni Kaminetzky.[2] In the Texas Action, Plaintiffs alleged fraud, negligent misrepresentation, constructive fraud, DTPA,[3] conversion, contribution, breach of contract, conspiracy, a shareholders' claim, damages and rescission, and asked for attorneys' fees.

For more than five years the parties engaged in extensive pre-trial litigation. During this time depositions were taken, documents exchanged, and motions made. Twice, the Debtor unsuccessfully attempted to remove this action to the United States District Court in Texas.

On November 4, 1996, the Texas Action was called for trial. The Court asked the parties if they were ready to proceed. Plaintiffs answered in the affirmative. The Debtor and Kaminetzky indicated that they were not ready to proceed and unsuccessfully moved for a continuance. Then the Court and the Debtor's attorney, Mr. Whalen, had the following exchange:

> Mr. Whalen: Well your honor, we will just confess a default judgment at this point against Mr. Weiss.
>
> The Court: Your [sic] going to confess judgment?
>
> Mr. Whalen: I'm going to confess judgment as requested in their pleadings.

---

1. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2. *Charles Nissan, Herbert Schneider, Ammon Gilaad, Lev Abramovich, Menachem Darwish, Choice Acquisitions No. One, Inc., and Choice Acquisitions No. Five, Inc. v. Dov Avni Kaminetzky and Howard Weiss,* No. 91–16901–A (Dist.Ct. Harris County, 333rd Judicial Dist.).

3. Tex.Bus. & Com.Code Ann. § 17.41 et seq., known as the Deceptive Trade Practices–Consumer Protection Act ("DTPA").

(T. 59–60) [4]

Thereafter, Judge Henry Dalehite issued a "Final Judgment" (the "Texas Judgment") on November 25, 1996. The Texas Judgment provides that the Debtor confessed and agreed to judgment in favor of the Plaintiffs in the sum of $325,000 plus interest for actual damages and $79,000 in attorneys fees.

Judge Dalehite also issued, roughly contemporaneously with the issuance of the Texas Judgment, "Findings of Fact and Conclusions of Law" dated January 23, 1997. In the Findings of Fact and Conclusions of Law, Judge Dalehite made specific findings of fact regarding the allegations of the Plaintiffs in the Texas Action and drew legal conclusions based upon those findings. He found and concluded:

> After considering the pleadings and the allegations alleged therein, the defendants' confession of judgment in favor of the plaintiffs in the sum of $337,500 for actual damages, the evidence, argument and briefs from counsel, the court, in response to the defendants' request, from the preponderance of the evidence makes its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. On the basis of the defendants' confession of judgment, and the plaintiffs and defendants' offer of an agreed judgment, the court finds that:

 a) The defendants represented to the plaintiffs that the car wash cost $735,000. They did not disclose that Park National Bank sold the car wash for $600,000. That such representations were: false; material; made by the defendants, Kaminetzky and Weiss, with knowledge of the falsity; positive assertions; made with the intention that they should be acted upon to the detriment and to the reliance by the plaintiffs; who did rely upon said representations to their detriment; for which they have suffered injuries in the amount of $337,-500.00 in connection with the individual plaintiffs investment and purchase of securities and the corporate plaintiffs' purchase of the car wash.

 b) The defendants, Kaminetzky and Weiss, intended that the plaintiffs rely upon the misrepresentation about the cost of the car wash, and the plaintiffs relied upon the misrepresentation to their detriment in the sum of $337,500.00. . . .

 c) The defendants were in a fiduciary relationship with the plaintiffs and they breached their fiduciary duty to the plaintiffs. . . .

 d) The defendants misappropriated the business opportunity of purchasing the car wash for $600,000.

 e) The defendants negligently misrepresented material facts. . . .

 . . . . .

 h) The defendants engaged in false, misleading, unconscionable and deceptive acts or practices by making the misrepresentations stated above. . . .

 . . . . .

5) The court finds that the plaintiffs are entitled to recover their attorney's fees pursuant to the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm.Code § 17.50; Texas Securities Act, V.A.T.S. § 581–33; the Texas Real Estate and Securities Fraud Act, Tex.Bus. & Comm.Code § 27.01; and Tex.Civ.Prac. & Rem.Code 38.01.

### CONCLUSIONS OF LAW

1) The defendants, jointly and severally, confessed and agreed to judgment in

---

**4.** Citations to "(T.)" refer to the November 4, 1996 trial transcript.

favor of the plaintiffs in the sum of $337,500.

2) The defendants committed common law fraud, securities fraud, real estate fraud and constructive fraud....

3) The defendants breached their fiduciary duty to the plaintiffs.

. . . . .

6) The defendants are jointly and severally indebted to the plaintiffs ... in the sum of $325,000.

Findings of Fact and Conclusions of Law at 2–10. Debtor did not appeal and his time to do so has long ago run.

The Plaintiffs then brought an action in the New York State Supreme Court to enforce the Texas Judgment pursuant to the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution. That action, which was contested by the Debtor, was decided in the Plaintiffs' favor on June 20, 1997.[5]

On February 11, 1998, Debtor filed a voluntary petition pursuant to chapter 7 of the Code in this Court. Plaintiffs then commenced this adversary proceeding pursuant to § 523(a)(2)(A) and 523(a)(4) of the Code to contest the dischargeability of the debt owed to the Plaintiffs pursuant to the Texas Judgment.

### FACTS

Each side put on one witness. Dr. Menachem Darwish, one of the Plaintiffs, testified first. He testified that he first became acquainted with the Debtor in 1988 or 1989 when the Debtor was soliciting investors for a car wash in Texas. Darwish testified that he, along with several others, invested in the car wash. Thereafter, he found that the car wash was poorly run and he began to suspect that profits from the car wash were being siphoned-off. He retained an attorney in Texas and began to investigate the finances of the car wash. He found that the purchase price of the car wash was less than he had been told when he made his initial investment. In addition, he testified that he was a personal guarantor of the bank loan that was used to finance the purchase of the car wash and that he, along with the other investors, was required to pay the bank $10,000 each for monies owed the bank by the car wash. He then testified that in 1991 he and the other Plaintiffs brought the Texas Action, which was premised on several theories of recovery, including fraud.

The other witness was the Debtor. He testified that he told the investors that the full amount of money being paid was for the purchase of the car wash and for certain improvements to the facility. Specifically, he testified that the purchase price for the car wash itself was $600,000 and that $135,000 was earmarked for improvements creating a total purchase price of $735,000. In support of his contention that the Plaintiffs were fully aware of the intended use of the $735,000, Debtor offered a document entitled "Earnest Money Contract" into evidence. This document laid out the total purchase price and a breakdown of how the money was going to be used. The "Earnest Money Contract," however, was only signed by the Debtor and Kaminetzky and not by any of the Plaintiffs. Furthermore, the Debtor could produce no other document to substantiate his contention that the Plaintiffs were aware of the finances of the car wash investment.

The testimony was not dispositive of the issues before me.

### ISSUES PRESENTED

■ The plaintiffs have the burden of proof. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that a creditor must prove that a debt is nondischargeable by a preponder-

**5.** *Charles Nissan, Leo Abramovich, Herbert Schneider, Menachem Darwish and Ammon Gillad v. Don Avni Kaminetzky and Howard Weiss,* (N.Y.Sup.Ct. June 20, 1997) (Ramos, J.).

ance of the evidence). They have not met that burden by in court testimony before me. The Plaintiffs' case, therefore, succeeds or fails solely on the preclusive effect of the Texas Judgment.

I must address the nature of the Texas Judgment and its preclusive effect, if any, under Texas law. Next, I must determine whether the entry of a confessed judgment in a Texas state court proceeding, in which several causes of action were alleged, including fraud, precludes the Debtor from presenting any evidence in a subsequent Bankruptcy Court action determining the dischargeability of the judgment debt. Thereafter, I can make an ultimate determination as to whether the debts at issue are dischargeable.

### DISCUSSION

### A. Treatment of State Court Judgments

■ As a general rule, the final judgments of state courts must be given full faith and credit by Bankruptcy Courts. The Full Faith and Credit Act, which controls the effect of state judgments in subsequent federal litigation, provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738 (1998). Thus, a federal court must accord a state court judgment the same preclusive effect it would be accorded by the rendering state. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Full Faith and Credit Act also requires bankruptcy courts to recognize state court decisions. See, e.g., Bowers v. Connecticut Nat. Bank, 78 B.R. 388 (D.Conn.1987); In re Farrell, 27 B.R. 241 (Bankr.E.D.N.Y. 1982); In re Lockwood, 14 B.R. 374 (Bankr.E.D.N.Y.1981). A bankruptcy court would overreach its authority if it did not afford state court judgments full faith

and credit. See, e.g., In re Alston, 49 B.R. 929 (Bankr.E.D.N.Y.1985); In re Mastercraft Record Plating, Inc., 39 B.R. 654 (S.D.N.Y.1984).

To determine what effect a state court judgment has in federal court, the federal court must first determine the preclusive effect, if any, the state judgment would have in its own state. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Thus I am bound to accord the Texas Judgment full faith and credit, and apply Texas rules of preclusion.

### 1. Texas State Court Final Judgment

To determine the preclusive effect, if any, the Texas Judgment has under Texas law, I must first determine the nature of the Texas Judgment and its legal significance. In order to ascertain the legal significance of the Texas Judgment, I begin by examining its terms. The Texas Judgment states that the Plaintiffs "agreed to and accepted the defendants' *confession of judgment* and proposed *agreed judgment.*" (emphasis added). The precise meaning of this clause is ambiguous because under Texas law a "confession of judgment" and an "agreed judgment" are each means by which a case may be resolved, but they have different legal significance.

■ With regard to the term "agreed judgment," I find that the presence of this term alone is not dispositive of Judge Dalehite's intent. Under Texas law, consent judgments or agreed judgments are, "in effect, merely contracts of the parties acknowledged in open court and ordered to be recorded, but as such they bind the parties as fully as do other judgments." *Prince v. Frost–Johnson Lumber Co.*, 250 S.W. 785, 790 (Tex.Civ.App.1923).

■ Here, there is no indication of an agreed judgment or contract acknowledged in open court, on the record. No terms or provisions were discussed on the

record. There is no contract that memorializes the terms of an agreement between the parties in the Texas record. The Texas Judgment is simply not an acceptance by the state court judge of an agreement between the parties, instead, the record reflects the Debtor's intent to have a judgment entered against him for the full amount of damages sought by the Plaintiffs. It does not, therefore, satisfy the definition of an agreed judgment.

On the other hand, I find that the term "confessed judgment" in the Texas Judgment does indicate the intent of the state court judge and the parties. In Texas, a confession of judgment is described as follows:

Any person against whom a cause of action exists may, without process, appear in person or by attorney, and confess judgment therefor in open court as follows:

(a) A petition shall be filed and the justness of the debt or cause of action be sworn to by the person in whose favor the judgment is confessed

(b) If the judgment is confessed by attorney, the power of attorney shall be filed and its contents be recited in the judgment.

(c) Every such judgment duly made shall operate as a release of all errors in the record thereof, but such judgment may be impeached for fraud or other equitable cause.

Rule 314, Texas Rules of Civil Procedure (1999).

As with the definition of agreed judgment, the actions of the parties and the state court do not neatly fit within the definition of confessions of judgment. For example, no evidence was presented to this Court that the Plaintiffs filed a petition swearing to the justness of the cause of action and there is also no indication that the Debtor filed a power of attorney. *See,* however, *Chestnutt v. Pollard,* 77 Tex. 86, 13 S.W. 852, 852–53 (1890) (holding that an affidavit attesting to the justness of a plaintiff's cause of action is unnecessary where a judgment is confessed in an action in which process has been regularly issued and served); *Johnson v. Cole,* 138 S.W.2d 910, 913 (Tex.Civ.App.1940) (holding that a confessed judgment agreed to by the confessing party's attorney is not invalid on its face even though a power of attorney was not filed or recited in the judgment). In addition, as discussed above, the Texas Judgment is ambiguous in that it states that the court "accepted the confession of judgment and the agreed judgment and ordered that same be filed as part of the record in this cause." (Ex. 2, 1–2).

■ Whatever ambiguity is created by the language of the Texas Judgment is made absolutely clear, however, by the transcript of the hearing that lead to the Texas Judgment. During that hearing Judge Dalehite inquired of the defendants, "You're going to confess judgment?" Mr. Whalen, Debtor's attorney, replied "I'm going to confess judgment against Mr. Weiss as requested in their pleadings." (T. 60). In addition, Judge Dalehite and all parties present for trial used the terms "confess(ed/ing) judgment" to describe the Debtor's actions another ten times. (T. 59, 61, 62, 65, 67, 68). Moreover, neither the state court judge nor the other parties present used the term "agreed judgment" even once to describe their actions or intentions. Hence, I am persuaded that the Debtor entered a judgment by confession and not an agreed judgment. However, even if I were to find that the Texas Judgment was an agreed judgment, an agreed judgment is entitled to collateral estoppel effect. *See In Re Lacy,* 947 F.2d 1276, 1277 (5th Cir.1991).

**2. Effect of Judgment By Confession**

The confessed judgment is dispositive against the Debtor on the issue of fraud for three reasons. First, Judge Dalehite made specific findings of fact and drew conclusions of law regarding the Debtors's fraudulent acts and breach of fiduciary

duty. In particular, he found, by a preponderance of the evidence, that the Debtor defrauded the plaintiffs and that he breached his fiduciary duty to them. (Findings of Fact and Conclusions of Law at 8.)

▮▮▮▮ Second, case law supports the notion that a judgment by confession is conclusive on the merits, and there is necessarily a finding of fault as to each cause of action alleged in the complaint. "A judgment by confession, consent or agreement is res judicata in subsequent suits and as conclusive as a judgment rendered after contest, because the conclusiveness of a judgment depends on the source from which it came and not on the attitudes of the parties." 48 *Tex.Jur.3d Judgments* § 423 (1998); *see also Barraco v. Courthouse Pharmacy, Inc.*, 280 S.W. 307 (Tex. Civ.App.1925); *Gulf Prod. Co. v. Palmer*, 230 S.W. 1017 (Tex.Civ.App.1921); *Castleberry v. Bussey*, 166 S.W. 14 (Tex.Civ.App. 1914); *Robbins v. Hubbard*, 108 S.W. 773 (Tex.Civ.App.1908); *Hartford Fire Ins. Co. v. King*, 31 Tex.Civ.App. 636, 73 S.W. 71 (1903); *Haynie v. McAnally*, 27 S.W. 431 (Tex.Civ.App.1894); *Garner v. Burleson*, 26 Tex. 348 (Tex.1862). The court in *Hartford Fire Ins. Co.*, found that in order for "the merits of the suit [to] be determined, it is not deemed necessary that there should have been an actual trial and canvassing of the facts of the case for a judgment entered upon confession, without action is as conclusive as any other." 73 S.W. at 74. Consequently, reading the Texas Judgment as a confession of judgment, it is conclusive on the issue of fraud. "A judgment is the law's last word in a judicial controversy.... [It is] the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it, in an action or proceeding." *Fort Worth Acid Works v. City of Fort Worth*, 248 S.W. 822 (Tex.Civ.App.), *aff'd*, 259 S.W. 919 (Tex.Com.App.1924). Finally, the language of the Texas statute indicates a finding of fault. More specifically, the "in whose favor" language of Rule 314(a) of the Texas Rules of Civil Procedure indicates that when a judgment is confessed, there is a finding of fault against the confessor.

## B. Texas Preclusion Law

State courts, including Texas, recognize the common law doctrine of collateral estoppel, as a component of their preclusion law. The common law doctrine of collateral estoppel is defined as:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.

Restatement (Second) of Judgments § 27 (1980).

▮▮▮▮ "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Under Texas law, collateral estoppel "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984).

▮▮▮▮ In Texas, essential issues of fact adjudicated by a court of competent jurisdiction are binding in subsequent actions by the same parties and those who stand in privity with them, even though the subsequent action is based on a different cause of action. *See Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex.1982); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362 (Tex.1971). A party seeking to invoke

the doctrine of collateral estoppel in Texas must establish that:

> (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Beech Aircraft,* 663 S.W.2d at 820–21.

■ In order to ascertain whether an issue has been actually litigated, courts may look beyond the judgment and examine the pleadings and the evidence presented in the prior action. *See Santopadre v. Pelican Homestead & Sav. Ass'n,* 937 F.2d 268, 273 (5th Cir.1991); *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 459 n. 7 (5th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). Consequently, I may look beyond the Texas Judgment and examine the parties' pleadings as well as the evidence in the Texas Action to determine whether the issue of fraud was actually litigated. The Restatement (Second) of Judgments § 27 cmt. d (1982) supports the proposition that when a question of fact is put in issue by the pleadings or otherwise, and is submitted to the trier of fact for determination, and is determined, that question of fact has been "actually litigated." *See also Santopadre,* 937 F.2d at 273; *James Talcott, Inc.,* 444 F.2d at 459–60.

■ What then is the preclusive effect of a consent judgment under Texas law? I have not been able to find a single published decision from either a Texas state court or the Fifth Circuit. Thus, this appears to be a matter of first impression. I am guided, though, by certain precedent involving default and agreed judgments, the Restatement (Second) of Judgments, and principals of due process.

The traditional rule, which is outlined in the Restatement (Second) of Judgments § 27, provides that default, confessed and agreed judgments should not be given preclusive effect in a subsequent action between the same parties. There is a growing body of law both within Texas and in the Federal Circuit Courts, however, that addresses the question of whether a default judgment under certain circumstances can satisfy the "fully and fairly litigated" requirement for issue preclusion. These cases turn on the issue of what is the appropriate definition of "litigation." According to these courts, a matter may by litigated, for collateral estoppel purposes, in several circumstances other than a determination on the merits by the ultimate trier of fact.

Notably, these courts have focused on situations in which one party has actively engaged in pre-trial litigation for an extended period of time and then chooses, at a late stage in the discovery process, not to have the merits of its claims or defenses adjudicated. The courts that have looked at this problem have concluded that there is a fundamental unfairness in requiring the opponent to such a litigant to relitigate the issues raised in the first case as though that case never occurred. In addition, these courts have also found that extensive involvement by a party in pre-trial litigation provides the same safeguards against unfair applications of issue preclusion as the traditional rule.

For example, in *F.D.I.C. v. Daily (In re Daily),* 47 F.3d 365 (9th Cir.1995) the FDIC brought an action pursuant to the Racketeer Influenced and Corrupt Organizations Act against the debtor and several other defendants alleging that the defendants had obtained money from a bank by fraud. *Id.* at 366. Over the course of two years, the FDIC sought discovery from the debtor. *Id.* at 367. The debtor, however, provided nothing and the trial court then ordered that all allegations in the FDIC's complaint be deemed admitted and entered a default judgment against the debtor. *Id.* The Ninth Circuit was then faced with the question of whether the default judgment should be given preclusive effect in the debtor's bankruptcy case. The court found that it should. In reaching this conclusion, it reasoned that:

[t]he judgment entered in the RICO action was not an ordinary default judgment. Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before the judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. *In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.*

*Id.* at 368 (emphasis added).

The holding in *Daily*, and the principles underlying it, has been adopted by Fifth Circuit as well as the Third, Tenth and Eleventh Circuits. *See Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210 (3d Cir.1997); *Gober v. Terra + Corp., (In re Gober),* 100 F.3d 1195 (5th Cir.1996); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319 (11th Cir.1995); *Magdelena Moretta McCart v. Jordana (In re Jordana),* 232 B.R. 469 (10th Cir. BAP 1999).

The facts here go beyond *Daily* both in degree of involvement by the Debtor and in terms of the unfairness to the Plaintiffs if they were required to litigate the issue of the Debtor's fraud again before me. In this case, the Debtor was actively involved in discovery and motion practice for more than five years. During that time documents were exchanged, depositions held, and motions made by both parties. In addition, the record before me indicates that on the day this case was called to trial, there were two motions pending before the Texas Court: one for summary judgment and the second for discovery sanctions. The Debtor appears to have vigorously defended this case. For example, he twice tried to remove the Texas Action to the United States District Court for the Southern District of Texas, finally resulting in an unusually harsh opinion by the District Court and sanctions against the Debtor. *See Park Nat. Bank of Houston v. Kaminetzky,* 976 F.Supp. 571 (S.D.Tex.1996) (mem. and order grant'g sanctions, costs and fees).

As a matter of Texas law, it cannot be said that the Debtor did not fully and fairly litigate the issues raised by the Plaintiffs in the Texas Action. *See State Farm Fire and Cas. Co. v. Fullerton,* 118 F.3d 374, 383 (5th Cir.1997) ("in Texas 'full and fair litigation' need not involve contested issues." (citing *Rexrode v. Bazar,* 937 S.W.2d 614, 617 (Tex.App.1997))); *In re Gober,* 100 F.3d at 1205–06; *Garner v. Lehrer (In re Garner),* 56 F.3d 677, 681 (5th Cir.1995); *Lacy v. Dorsey (In re Lacy),* 947 F.2d 1276, 1277–78 (5th Cir. 1991); *Crain v. Limbaugh (In re Limbaugh),* 155 B.R. 952, 955 (Bankr.N.D.Tex. 1993) (finding that any final disposition of a case should be given preclusive effect in a subsequent action "where the quality, extensiveness and fairness of the procedures followed in the prior litigation are comparable to full adversary contests.").

In addition, estopping the Debtor from relitigating the issues to which he confessed in the Texas Action satisfies the traditional reasons outlined in the Restatement (Second) of Judgments for disallowing collateral estoppel of default and confessed judgements. The Restatement identifies several reasons for not giving preclusive effect to default or confessed judgments. "The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all." *Restatement (Second) of Judgments* § 27 cmt. e (1980). The concerns raised by the editors of the

Restatement are most apt when a party does not respond to initiatory pleadings or stops participating in a case at a very early stage. The extensive involvement of the Debtor in the Texas Action more than ensures that the concerns raised by the editors of the Restatement are not applicable here. Far from being an inconvenient forum or an insignificant sum at stake, the Debtor found the forum convenient enough and the amount at stake significant enough to appear and actively litigate the issues raised for five years. When the case was finally called for trial, Debtor asked Judge Dalahite for a continuance, not for the purpose of finding a more convenient date for one of his witnesses but, instead, so that he could conduct further discovery and motion practice. It appears that one reason the Debtor confessed judgment was to avoid a trial he thought he could not win.

The editors of the Restatement also recognized that blind application of a rule requiring parties to relitigate issues raised and contested in a prior matter, could, in some circumstances, lead to unfair outcomes. To that end, the Restatement states that a "party's reasons for not litigating in [a] prior action may be such that preclusion [is] appropriate." *Id.* I believe that under Texas law, even if the Debtor's confession of judgment does not satisfy the fully and fairly litigated standard, that the above recited exception to the general rule applies and that collateral estoppel applies to the Debtor's confession of judgment for this additional and independent reason. *See In re Limbaugh,* 155 B.R. at 955.

Finally, precluding the Debtor from relitigating the question of his fraud before me does not violate the principle of due process. Due process guarantees every party the right to notice and an opportunity to be heard. *See In re Jordana,* 232 B.R. at 480 (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). In this case, the Debtor has had both. *See In re Daily,* 47 F.3d at 369 ("where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding." (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971))).

The other two requirements for issue preclusion are also met here. The facts regarding the Debtor's fraudulent acts and his breach of his fiduciary duty to the Plaintiffs were essential to the Texas court's conclusions of law and the Texas Judgment. That reliance is evidenced by the Texas court's specific findings of fact regarding these issues. In addition, there can be no dispute that the parties in this action were cast as adversaries in the Texas Action. Since under Texas law all three elements of the collateral estoppel test are met here, this Court will apply the doctrine of collateral estoppel to preclude the Debtor from relitigating any issues regarding fraud or breach of fiduciary duty that were raised in Texas state court proceedings.

## C. Dischargeability of Debts

 One of the fundamental principles of the bankruptcy laws is to provide honest debtors with a fresh start. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (quoting *Williams v. United States Fidelity & Guar. Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915)). A fresh start has been described as "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (*quoting Local Loan Co.,* 292 U.S. at 244, 54 S.Ct. 695). The primary vehicle for giving debtors a fresh start is the discharge of most of the debtor's prepetition obligations.

 The Bankruptcy Code, however, enunciates several exceptions to discharge, two of which are significant here. First,

the Code excepts debts arising through "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (1998). Second, debts are nondischargeable if they arose from "fraud or defalcation [on the part of the debtor] while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (1998). These exceptions are an extension of the general bankruptcy policy that discharge is not meant to protect the dishonest debtor. *See Bruning v. United States,* 376 U.S. 358, 361, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964).

I hold that pursuant to the Full Faith and Credit Act, the Texas Judgment represents a final adjudication that is conclusive on the issues of fraud and breach of fiduciary duty. Moreover, debts that arise out of fraudulent acts, such as the debts at issue here, are not dischargeable in bankruptcy. *See* § 523(a)(2)(A) and (a)(4). The Debtor is not the type of "honest debtor" that the Code's dischargeability provisions were designed to protect and hence, the Debtor's debt to the Plaintiffs will not be discharged by this bankruptcy case.

### D. Attorneys' Fees

■ The Plaintiffs also seek to have the portion of the Texas Judgment that granted them $79,000 in attorneys fees deemed nondischargeable. They cite no authority for this argument. The Plaintiffs' prayer for fees is denied because they have failed to establish that the fees portion of the Texas Judgment falls into one of the exceptions to discharge described in section 523.

I note *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) and *Novartis Corp. v. Luppino (In re Luppino),* 221 B.R. 693 (Bankr.S.D.N.Y.1998), although not cited by the plaintiffs. In each case, it was clear that the attorneys' fees arose out of the respective debtor's fraudulent conduct. Here, though, I have not been provided with any evidence as to which claims the Plaintiffs' attorneys' were

granted or whether they arose directly out of the Debtor's fraudulent conduct. In the absence of such evidence, the general, liberal rule regarding dischargeability of debts must control.

### CONCLUSION

Debtor seeks two bites of the litigation apple. He argues that the question of whether or not he defrauded the Plaintiffs was not "fully and fairly" litigated in the Texas Action and, therefore, the Texas Judgment is not entitled to preclusive effect here. He further argues that he cannot be denied a discharge of the debt he owes the Plaintiffs without a trial before me on this issue. Since the Plaintiffs did not present evidence of the Debtors fraudulent acts during the trial, the Debtor concludes, the question of whether or not the Debtor defrauded the Plaintiffs has not been proven either here or in Texas.

This argument is misplaced. Issue preclusion is not a game of "gotcha." Instead, it is a series of common law rules intended, *inter alia,* to conserve judicial resources and lend finality to disputes among parties. To that end, as between the same parties, each issue need be litigated or the parties have the opportunity to be litigate it only once. In other words, every party is entitled to have a day in court, but, with respect to any given issue, only one day.

Here, the Debtor had his day in court. It was on November 4, 1996, when, after five years of pretrial maneuvering, Judge Delahite called the case for trial. That was the Debtor's opportunity to litigate this issue. He declined to have a trial on the merits and instead confessed judgment. He certainly had a full and fair opportunity to litigate the question of whether or not he defrauded the Plaintiffs on the merits. He decided instead to admit his culpability.

Therefore, the debt owed the Plaintiffs as a result of the Texas Judgment, and any accrued interest, is not discharged, except

for the legal fees awarded, which are discharged.