In re John F. SWILLEY, a/k/a
Floyd Swilley, Debtor.

Shadow Factory Films Ltd., Co., an
Oklahoma Limited Liability
Company, Plaintiff,

v.

John F. Swilley, a/k/a Floyd
Swilley Defendant.

Bankruptcy No. C/A 02–09234–W.
Adversary No. 02–80347–W.

United States Bankruptcy Court,
D. South Carolina.

April 17, 2003.

James E. Chaffin, Jr., Lester Law Firm, Columbia, SC, John R. Lester, Columbia, SC, for Debtor.

W. Ryan Hovis, Rock Hill, SC, trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Summary Judgment (the "Motion") filed by Shadow Factory Films Ltd., Co. ("Plaintiff"). Plaintiff urges the Court to apply the principles of res judicata, collateral estoppel, or judicial estoppel to bar John F. Swilley ("Debtor" or "Defendant") from asserting that the debt arising from prior litigation with Plaintiff is dischargeable. With Defendant thus estopped, Plaintiff asks the Court to grant its Motion pursuant to Federal Rule of Bankruptcy Procedure 7056 and declare that the debt at issue is excepted from discharge pursuant to 11 U.S.C.

§ 523(a)(2) and § 523(a)(4).[1] In response, Defendant argues that res judicata does not apply in this case because the judgment resolved a tort action and not the issue of dischargeability. Defendant also argues that collateral estoppel cannot be applied because the prior judgment does not contain an actual finding of fraud and because there is no unity of parties. Finally, Defendant argues that the District Court for the Western District of Oklahoma lacked jurisdiction to consider the dischargeability of the debt because only bankruptcy courts can decide this issue. After considering the pleadings filed in the adversary proceeding, the attached materials from the prior litigation presented in support of the Motion, and counsel's arguments, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052.[2]

## FINDINGS OF FACT

1. On December 29, 2000, Plaintiff filed a Complaint against Defendant, Protocol Asset Management Trust, Laurel Knuckles ("Ms. Knuckles"), Antony Abirached, A. Abira Financial Associated Ltd., and Loli Trade & Finance Establishment, Ltd. in the United States District Court for the Western District of Oklahoma (the "Oklahoma litigation"). Generally, the Oklahoma litigation arose from a dispute concerning a venture capital agreement whereby the above-listed defendants agreed to lend or participated in an agreement to lend Plaintiff $125,000,000 over a ten year period.

2. On March 7, 2002, Defendant, in both an individual capacity and as Trustee for Protocol Asset Management Trust, and Ms. Knuckles executed a Settlement Agreement (the "Settlement Agreement") with Plaintiff to resolve the Oklahoma litigation. In the Settlement Agreement, the parties stipulate to three initial points. First, they agree that Plaintiff's causes of action include a claim for money acquired by false pretenses, false representation or actual fraud, fraud and defalcation while acting in a fiduciary capacity, embezzlement, and larceny. Next, the parties stipulate that they seek to settle all claims asserted or that could have been asserted in the Oklahoma litigation. Finally, the defendants stipulate "that one or more of Plaintiff's claims are of such character and nature that they cannot be discharged in bankruptcy."

3. Based upon these initial stipulations in the Settlement Agreement, the parties then agree to have a judgment entered against Defendant, Ms. Knuckles, and Protocol Asset Management Trust, jointly and severally, in the amount of $300,000 on Plaintiff's claims that are not dischargeable in bankruptcy. The Settlement Agreement provides that the journal entry of the judgment shall reflect that the pleadings in the Oklahoma litigation are deemed to have been amended to assert claims of such character and nature that they cannot be discharged in bankruptcy. The Settlement Agreement then provides that the journal entry of judgment shall "recite agreement and stipulation of the Parties and a factual finding by the Court that, *inter alia*, the judgment is entered on one or more of those claims that are of such character and nature that they cannot be

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

discharged in bankruptcy and that as a result thereof the judgment is not dischargeable in bankruptcy."

4. On March 8, 2002, Plaintiff, Defendant, and Ms. Knuckles participated in a settlement conference before the Honorable Magistrate Gary Purcell of the United States District Court for the Western District of Oklahoma. Judge Purcell thoroughly reviewed the terms of settlement and announced his understanding of the parties' settlement on the record. Specifically, Judge Purcell stated that the parties agree to have findings and a judgment entered against Defendant, Ms. Knuckles, and Protocol Asset Management Trust, jointly and severally, on Plaintiff's claims that are not dischargeable in bankruptcy in the amount of $300,000. Judge Purcell also indicated that the parties agree that any pleadings should be amended to assert claims that cannot be discharged in bankruptcy, and he found that it was clear that the agreement anticipates that no part of the judgment is capable of being discharged in bankruptcy.

5. During the settlement conference, Judge Purcell asked Defendant and his counsel if they understood and agreed to the terms of the Settlement Agreement. Both Defendant and his counsel responded affirmatively. Defendant also indicated that he was not threatened or forced to enter into the Settlement Agreement.

6. On March 11, 2002, the Honorable Stephen P. Friot, United States District Judge for the Western District of Oklahoma, entered the Journal Entry of Judgment (the "Oklahoma Judgment") resolving the Oklahoma litigation. The court recognized that Defendant, Ms. Knuckles, and Protocol Asset Management Trust stipulated to certain facts, and, based upon these facts, the court found that the claims Plaintiff asserted against them were of such character and nature that they cannot

be discharged in bankruptcy. The court further found that, to the extent the pleadings were ambiguous, the court deemed them amended to assert claims of such nature and character that they cannot be discharged in bankruptcy. The court then entered the Oklahoma Judgment against Defendant and Ms. Knuckles on one or more of the nondischargeable claims and accordingly held that the Oklahoma Judgment was excepted from discharge. The Court entered a judgment against Defendant, Ms. Knuckles, and Protocol Asset Management Trust, jointly and severally, in the amount of $300,000. Attorneys for Plaintiff and Defendant, Ms. Knuckles, and Protocol Asset Management Trust provided consensual signatures indicating that they agreed to and approved of the Oklahoma Judgment.

7. The Oklahoma Judgment is final, and there was no appeal of it.

8. On August 5, 2002, Defendant filed his Voluntary Petition seeking Chapter 7 relief.

## CONCLUSIONS OF LAW

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, applicable to adversary proceedings under the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. Summary judgment is appropriate "if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this initial showing is made, the burden of production shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 5(e). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and must demonstrate there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348; *see also Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121, 128 (Bankr.D.S.C.2000) (quoting *Dunes Hotel Assoc. v. Hyatt Corp. (In re Dunes Hotel Assoc.)*, 194 B.R. 967, 976 (Bankr.D.S.C.1995)) ("'[T]he party opposing summary judgment may not merely rely on his pleadings but must set forth specific facts which controvert the moving party's facts and which show the existence of a genuine issue for trial.'"). The Court should grant summary judgment "against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dunes Hotel Assoc.*, 194 B.R. at 976 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## B. Application of the Summary Judgment Standard to the Motion

### Res judicata

■ Res judicata is a broad principle that prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *See Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re The Roof Doctor*, C/A No. 97–01648–W, 1998 WL 2016785, slip op. at 3 (Bankr.D.S.C. Aug.26, 1998) (citing *In re Varat Enterprises, Inc.*, 81 F.3d 1310 (4th Cir.1996)). The elements of res judicata are the following: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003); *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir.1990). "On the merits" is a term of art and does not necessarily mean that the issues were actually litigated and is substantially different and broader than the "actually litigated" element of collateral estoppel. *See Fed. Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226, 236 (Bankr. E.D.Va.2000). To determine whether the claim was previously available to a party in the earlier suit, the Fourth Circuit has adopted a transactional approach whereby it considers whether the roots of both actions arise from the same series of operative facts. *See Grausz*, 321 F.3d at 473; *Keith*, 900 F.2d at 739.[3]

---

**3.** The Court notes that, in *Keith,* the Fourth Circuit found that consent judgments can have preclusive effect if the parties intended to foreclose litigation of a claim through a settlement agreement. *See* 900 F.2d at 741;

In dischargeability proceedings, however, the use of res judicata is limited. In *Felsen,* the Supreme Court held that bankruptcy courts are not confined to reviewing the judgment and record of a prior state court proceeding when considering the dischargeability of debt. *See* 442 U.S. at 139, 99 S.Ct. 2205. The Court supported this conclusion by reasoning that allowing state courts to determine the dischargeability of a debt undercuts statutory policy that favors resolving dischargeability issues in bankruptcy courts. *See id.* at 136, 99 S.Ct. 2205. Moreover, the Court questioned the merit of requiring parties to address dischargeability issues in state court and preserve them for subsequent determination by a bankruptcy court when the issues are not yet ripe because no bankruptcy case has been filed. *See id.* at 137, 99 S.Ct. 2205; *see also Tatge v. Tatge (In re Tatge),* 212 B.R. 604, 608–09 (8th Cir. BAP 1997) (declining to apply res judicata to a prepetition state court judgment incorporating the parties' settlement agreement that classified debts as dischargeable and reasoning that, at the time of the decree, no bankruptcy petition had been filed and no cause of action under § 523 existed). Accordingly, the Court held that bankruptcy courts could consider all the evidence, including a plaintiff's failure to pursue allegations of fraud and deceit during the prior state court proceeding, and look beyond the judgment and record of the prepetition state court proceeding to determine whether a debt is excepted from discharge. *See Felsen,* 442 U.S. at 139, 99 S.Ct. 2205.

*Felsen* effectively prohibits the blanket application of res judicata to prepetition state court determinations regarding the dischargeability of debts, and this principle has seemingly been applied to prepetition federal cases as well. *See Gilson,* 250 B.R.

at 238. For example, in *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois),* 201 B.R. 501, 511 (Bankr.N.D.Ill.1996), the bankruptcy court found that a federal district court's classification of a debt owed as nondischargeable was not res judicata as to the dischargeability of the debt. In *Zois,* the court reasoned that the district court lacked jurisdiction to reach this conclusion because, when it found that the debt was nondischargeable, no bankruptcy case had been filed. *See also Coopers & Lybrand, Ltd. v. Gibbs (In re Gibbs),* 107 B.R. 492, 497 (Bankr.D.N.J.1989) (finding that a federal district court lacked subject matter jurisdiction to define a debt owed under a judgment as nondischargeable where no bankruptcy case had been filed). Moreover, the bankruptcy court found that the issue of dischargeability had not been litigated in the prior proceeding but was simply included in the language of the order. *Cf. Saler v. Saler (In re Saler),* 217 B.R. 166, 170 (E.D.Pa.1998) (holding that a stipulation approved by a bankruptcy court that classified debts as excepted from discharge barred a redetermination of the issue of dischargeability in a subsequent bankruptcy case); *Policemen's & Firefighters' Ret. Fund of Covington v. Tranter (In re Tranter),* 245 B.R. 419, 420 (Bankr.S.D.Fla.2000) (finding that a prior determination by a bankruptcy court that a debt was excepted from discharge was binding in another proceeding to except the same debt from debtor's discharge in debtor's subsequent bankruptcy case).

Based upon *Felsen's* principles limiting the blanket application of res judicata to prepetition cases addressing the issue of dischargeability and because of other provisions of this Order, the Court denies this aspect of Plaintiff's Motion. This Court is given the opportunity to look beyond the

*see also Nash County Bd. of Educ. v. Biltmore* *Co.,* 640 F.2d 484, 487 (4th Cir.1981).

Oklahoma Judgment and the record of the Oklahoma litigation to decide whether Defendant's actions render his obligation excepted from discharge pursuant to §§ 523(a)(2) and (a)(4).

### Collateral Estoppel

■■■ While the application of res judicata has been limited in dischargeability proceedings, the narrower concept of collateral estoppel can be applied more easily. *See Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir.1997). Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding. *See Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir.1995). When applying the principle of collateral estoppel, the Court typically looks to the forum state's law of collateral estoppel; however, this case deals with a prior judgment from a federal court. *See McNallen*, 62 F.3d at 624. In this situation, the Court must consider the principles of federal collateral estoppel. *See Nestorio v. Associates Commercial Corp.*, 250 B.R. 50, 55 (D.Md. 2000); *Shearer v. Dunkley (In re Dunkley)*, 221 B.R. 207, 212 (Bankr.N.D.Ill. 1998); *Federal Trade Comm'n v. Harrell (In re Harrell)*, C/A No. 98–06980–W, Adv. Pro. No. 98–80266–W, 1999 WL 33486091, slip op. at 8 (Bankr.D.S.C. Apr. 22, 1999). For federal collateral estoppel to apply, the proponent must establish the following elements: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5)

the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *See Sec. & Exch. Comm'n v. Zandford*, 238 F.3d 559, 562 (4th Cir.2001), *rev'd on other grounds by* 535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002); *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir.1998).

The undisputed material facts indicate that some of these elements are satisfied. First, there is no dispute as to the identity of issues. In the Oklahoma Judgment, the court considered allegations of acquiring money by false pretenses, false representation or actual fraud, fraud and defalcation while acting in a fiduciary capacity, embezzlement, and larceny, the presumptive grounds for a debt to be declared nondischargeable pursuant to § 523(a)(2) and § 523(a)(4), and the court found that the amount of the judgment was not dischargeable in bankruptcy. Likewise, the issue in this proceeding is whether the debt is excepted from discharge pursuant to § 523(a)(2) and § 523(a)(4). Second, the undisputed material facts also demonstrate that the Oklahoma Judgment is final and was not appealed. Third, the record of the Oklahoma litigation reflects that Defendant was represented by counsel and that he participated in a sophisticated legal setting in two levels of the Federal District Court for the Western District of Oklahoma. Moreover, the transcript of the Settlement Conference reflects that Judge Purcell meticulously reviewed and announced the terms of the Settlement Agreement and asked Defendant if he understood and agreed to the terms. Defendant clearly agreed to the terms and had a full and fair opportunity to defend against Plaintiff's causes of action.

■■■ There is a question whether the Oklahoma Judgment satisfies the actually

determined element.[4] The Oklahoma Judgment is a consent order that settles the Oklahoma litigation. Ordinarily, when a case is settled rather than litigated to a judgment, the settlement does not give rise to collateral estoppel unless it is clear that the parties intended the settlement to have such an effect. *See Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("[S]ettlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear ... that the parties intended their agreement to have such an effect."); *Halpern v. First Georgia Bank*, 810 F.2d 1061, 1064 (11th Cir.1987) ("[T]he central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence."). Generally, courts have examined the parties' intent in two ways. One approach focuses on whether the settlement or consent judgment includes sufficient facts to support a finding that a debt is excepted from discharge. *See, e.g. Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992) (declining to apply collateral estoppel where the consent judgment did not include sufficient facts to support a finding that the debtor's fraud rendered the debt excepted from discharge); *Halpern*, 810 F.2d at 1064–65 (finding that the parties intended a prior state court consent order to operate as a final adjudication where the order included detailed factual findings sufficient to satisfy § 523(a)(2)(A) as well as specific language providing that liability under the judgment will be excepted from discharge in any bankruptcy case); *Giaimo v. Detrano (In re Detrano)*, 266 B.R. 282, 291 (E.D.N.Y.2001) (affirming the bankruptcy court's decision to decline to apply collateral estoppel where the settle-

ment order did not contain stipulated facts that would establish that a debt was nondischargeable under § 523(a)(4)); *Kohlenberg v. Baumhaft (In re Baumhaft)*, 271 B.R. 517, 522–23 (Bankr.E.D.Mich.2001) (applying collateral estoppel and granting summary judgment where the settlement agreement related to a consent judgment listed specific facts allowing the court to conclude a debt was excepted from discharge pursuant to § 523(a)(2)(A) and (B) and where the agreement provided that the parties would not object to the dischargeability of the debt in any subsequent bankruptcy proceeding); *Mustaine v. Kennedy (In re Kennedy)*, 243 B.R. 1, 12 (Bankr.W.D.Ky.1997) (finding that the consent order did not manifest an intent for the judgment to be conclusive where the judgment at issue was a blanket entry of judgment on the fraud counts of a complaint and contained no discussion of culpability); *Estate of Samson v. Ward (In re Ward)*, 194 B.R. 53, 58 (Bankr.D.S.C.1995) (denying summary judgment motion because the form order entered resolving a trial after the parties reached a settlement was silent as to the exact terms of settlement or the basis for the judgment but suggesting that collateral estoppel could be appropriate if the evidence indicated that a party confessed to committing a particular type of fraud or defalcation that would preclude discharge); *Pasada Del Rey v. Pearson (In re Pearson)*, 120 B.R. 396, 399 (Bankr.N.D.Tex.1990) (declining to apply collateral estoppel because there were insufficient facts in the consent order to establish that the debt was excepted from discharge); *Fisher v. Heatly (In re Fisher)*, C/A No. 92–73995, Adv. Pro. No. 92–8250, slip op. at 8 (Bankr.D.S.C. Feb. 1, 1993) ("Without the legal basis for the court's findings or a discussion or record of

---

4. Several cases refer to the this element as "actually litigated." The Court will use actual-

ly litigated and actually determined synonymously.

the elements constituting the plaintiff's burden of proof, this Court is unable to determine whether the plaintiff in the state court proved and whether that court properly considered the elements and issues of fraud as are required for a finding of non-dischargeability pursuant to 11 U.S.C. section 523. Therefore, the issues raised by 11 U.S.C. section 523(a)(2) and this lawsuit were not actually litigated."); *see also Nissan v. Weiss (In re Weiss)*, 235 B.R. 349, 358–59 (Bankr.S.D.N.Y.1999), *aff'd by* 255 B.R. 115 (S.D.N.Y.2000) (finding that a confession of judgment satisfied the actually litigated requirement and applied collateral estoppel to find that the debts at issue in the judgment were excepted from discharge where the confession of judgment represented a confession to each claim in the complaint, including fraud and breach of fiduciary duty). Other courts review prior consent or settlement orders to determine if it is clear that the parties intended the prior litigation to have a collateral estoppel effect. Courts using this approach have applied collateral estoppel even if the prior judgment does not contain specific stipulated or court-found facts to support a conclusion that a debt would be excepted from discharge pursuant to § 523. *See, e.g., Peoples Bank of Dickson v. Duke (In re Duke)*, 172 B.R. 575, 579 (M.D.Tenn.1994) (applying collateral estoppel to bar the debtor from arguing that her debt at issue was discharged when she asserted in a prior criminal matter that the debt would be excepted from discharge); *Doughty v. Hill (In re Hill)*, 265 B.R. 270, 279 (Bankr.M.D.Fla.2001) (concluding that a consent judgment without specific factual findings but with a specific stipulation to an amount of fraud damages satisfied the actually litigated element in a subsequent proceeding regarding dischargeability); *Buglione v. Berlingeri (In re Berlingeri)*, 246 B.R. 196, 201 (Bankr.D.N.J.2000) (applying collateral estoppel to a prior settlement order declaring that certain debts arising from a divorce proceeding would be excepted from discharge where it was evident the parties intended to settle an intentional tort claim and intended the settlement to survive a bankruptcy discharge); *Smith v. Smith (In re Smith)*, 189 B.R. 240, 244 (Bankr. D.N.H.1995) (declining to apply collateral estoppel because the prior judgment contained neither findings that the court could rely on to determine dischargeability or a statement indicating that the judgment would be excepted from discharge); *Smith v. Beeson (In re Smith)*, 128 B.R. 488, 491 (S.D.Fla.1991) (finding the issue of the debtor's fraud was sufficiently litigated in the prior state court proceeding to invoke collateral estoppel from language in the settlement agreement treating the judgment against the debtor as excepted from discharge).

■ Upon reviewing the Oklahoma Judgment, the Settlement Agreement, and the settlement conference transcript, the Court concludes that the parties clearly intended the Oklahoma Judgment to have preclusive effect as to the dischargeability of the amount owed under the judgment. The language of the Oklahoma Judgment is unequivocal and thoroughly describes the judgment amount as nondischargeable, and the language is much more than a mere statement that the debt would be excepted from discharge. *Cf. Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (finding that language in a consent decree providing that the debt at issue would not be dischargeable in a bankruptcy proceeding illustrated the parties' intent for the decree to have preclusive effect). Indeed, the Oklahoma Judgment indicates that the parties intended to conclusively resolve the issue of dischargeability by agreeing that (1) the pleadings are deemed amended to assert claims that cannot be

discharged in bankruptcy, (2) the Oklahoma Judgment is entered on one or more of the claims that are of such character and nature that they cannot be discharged in bankruptcy, (3) the Oklahoma Judgment is based upon a factual finding by the Court, and (4) the Oklahoma Judgment is not dischargeable in bankruptcy. Moreover, during the settlement conference, Judge Purcell carefully reviewed all of the terms of the Settlement Agreement, and he asked the parties whether they agreed to and understood these terms, including terms that indicated the judgment would be based upon factual findings. Defendant clearly acknowledged that he willingly accepted the terms, including the provisions concerning the nondischargeability of the debt. To this Court, the settlement materials clearly illustrate that the parties intended the Oklahoma Judgment to be the final resolution of the dispute, including the future dischargeability of the debt, and this Court will honor and enforce that intent. While the Oklahoma Judgment does contain a detailed enumeration of findings of fact, this step is not necessary when it is clear that the Oklahoma court relied on the factual basis that Defendant, Ms. Knuckles, and Protocol Asset Management Trust acknowledged and stipulated to prior to the entry of the Oklahoma Judgment in finding that the debt it represents would be excepted from discharge.

In other words, the Oklahoma Judgment is based on factual findings that were agreed upon and established in an unappealed order and record. For these reasons, the Court finds that the Oklahoma Judgment satisfies the actually litigated element of collateral estoppel.[5]

The Court also finds that the issue of dischargeability was a necessary part of the Oklahoma litigation. The original complaint includes specific allegations of acquiring money under false pretenses, false representation or actual fraud, fraud and defalcation while acting in a fiduciary capacity, embezzlement and larceny, and the Oklahoma court and the settlement materials recognize these allegations and buttress them further by a specific provision amending the complaint to ensure the allegations are pled sufficiently to support a finding of nondischargeability. This specificity leads the Court to conclude that the determination that the elements of § 523(a)(2) and § 523(a)(4) on which the Oklahoma Judgment was found to be nondischargeable were a necessary part of the proceeding. *See Nissan v. Weiss (In re Weiss)*, 235 B.R. 349, 359 (Bankr.S.D.N.Y. 1999), *aff'd by* 255 B.R. 115 (S.D.N.Y.2000).

For the above stated reasons, the Court concludes that all of the elements of federal collateral estoppel are satisfied. Accordingly, the Court applies the principle

---

**5.** Although the Court's prior cases involving collateral estoppel in the context of a dischargeability proceeding are slightly different from the case at bar, the finding that the Oklahoma Judgment was actually litigated is consistent with rulings in prior cases. For example, the Court previously applied collateral estoppel to default judgments where the judgments resulted in implicit findings satisfying the elements of subsections of § 523. *See, e.g., Stroud v. Read (In re Read)*, C/A No. 98–08285–W, Adv. Pro. No. 98–80295–W, 1999 WL 33485632, slip op. at 9–10 (Bankr.D.S.C. Jul. 1, 1999); *Brown v. Evans (In re Evans)*, C/A No. 98–05148–W, Adv. Pro. No. 98–80212–W, 1999 WL 33486079, slip op. at 11 (Bankr.D.S.C. Apr. 26, 1999); *Fed. Trade Comm'n v. Harrell (In re Harrell)*, C/A No. 98–06980–W, Adv. Pro. No. 98–80266–W, 1999 WL 33486091, slip op. at 15 (Bankr.D.S.C. Apr. 23, 1999). Arguably, a default judgment is less "actually litigated" than a settlement or consent order that both parties participate in drafting and then in presenting to a court for approval. Further, the Court has previously held that a prior judgment could clearly establish that a punitive damages award was based upon actions that were willful and malicious without making specific findings of willfulness or maliciousness. *See Read,* at 6.

to bar Defendant from arguing that the debt represented by the Oklahoma Judgment is dischargeable and grants Plaintiff's Motion.

### Judicial Estoppel

 "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir.1995); *see also In re Brown,* C/A No. 01–12506–B, slip op. at 5–6 (Bankr.D.S.C. Jun. 4, 2002); *Dunes Hotel Associates v. Hyatt Corp. (In re Dunes Hotel Associates),* C/A No. 94–75715–W, Adv. Pro. No. 95–8042–W, slip op. at 8–9 (Bankr.D.S.C. Feb. 12, 1997). "Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefitting itself by maintaining mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the courts to gain unfair advantage.'" *King v. Herbert J. Thomas Mem'l Hosp.,* 159 F.3d 192, 196 (4th Cir.1998). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *1000 Friends of Maryland v. Browner,* 265 F.3d 216, 226 (4th Cir.2001).

 In the Fourth Circuit, there is no specific formula for applying judicial estoppel; however, the presence of the following factors is generally required: (1) the party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding and the position sought to be estopped must be one of fact rather than law or legal theory; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage. *See 1000 Friends,* 265 F.3d at 226–27; *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996); *Dunes Hotel,* at 9. Of these factors, the third is the most critical. *See Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.,* 232 F.3d 383, 390 (4th Cir. 2000) (citing *Lowery,* 92 F.3d at 224). Judicial estoppel, however, will not be applied where the party's inconsistent positions results from inadvertence or mistake. *See King,* 159 F.3d at 196–97.

 In this case, the inconsistent position is that Defendant previously agreed to settlement terms and the entry of the Oklahoma Judgment based upon his stipulation and agreement to facts that rendered that debt excepted from discharge. Now, only a few months after consenting to the Oklahoma Judgment, Defendant attempts to deny this prior position, reject these facts, and argue that the Oklahoma Judgment is dischargeable. The elements are present to invoke judicial estoppel as Defendant asserts an inconsistent factual position that was accepted by the Oklahoma federal court during the settlement conference and by entry of the Oklahoma Judgment. While it has been held that judicial estoppel does not apply to the settlement of an *ordinary* civil suit because there is no judicial acceptance of anyone's position, in this case the federal court undertook a thorough effort to ensure the judgment was voluntary, complete and fully agreeable and therefore, there is sufficient judicial acceptance. See *Lowery,* 92 F.3d at 225 and *Reynolds v. Commissioner of Internal Revenue,* 861

F.2d 469, 473 (6th Cir.1988). Moreover, these inconsistent positions are an attempt to gain an unfair advantage as Defendant previously resolved litigation, which sought a recovery of $125,000,000 against him, for a significantly lesser amount conditioned upon its nondischargeability. In March 2002, Defendant adopted one position on dischargeability and less than five months later upon his filing bankruptcy, he argues a directly contrary position. In similar circumstances, other courts applied judicial estoppel in the bankruptcy context to bar a debtor who previously agreed that certain debts were excepted from discharge from subsequently asserting that the debts were dischargeable. *See Dunkley,* 221 B.R. at 213 (applying judicial estoppel to bar the debtor from adopting the inconsistent legal position that debts incurred pursuant to his divorce or separation were dischargeable when the debtor had, in a prior bankruptcy case, entered into a stipulated settlement order that treated the debt as excepted from discharge); *see also In the Matter of Cassidy,* 892 F.2d 637, 642 (7th Cir.1990) (applying judicial estoppel to bar the debtor from relitigating the issue of the dischargeability of his tax debts where the debtor previously urged the Seventh Circuit Court of Appeals to address the issue of discharge of his tax debts on appeal after his Tax Court proceeding, but, after receiving a ruling that the tax debts were excepted from discharge, the debtor returned to the bankruptcy court and argued that the Tax Court lacked jurisdiction to consider dischargeability). Likewise, because Defendant's position in the Oklahoma litigation was unequivocal and relied upon by Plaintiff and the court and he has now entirely reversed his position, this Court applies judicial estoppel in this case to bar Defendant from asserting that the underlying facts supporting the Oklahoma Judgment are insufficient to establish that the debt represented by the Oklahoma Judgment is excepted from discharge pursuant to § 523(a)(2) and § 523(a)(4). The Court has serious concerns about what appears to be Defendant's manipulation of the judicial process, and it will not countenance such gamesmanship.[6]

## CONCLUSION

For the above stated reasons, the Court grants Plaintiff's Motion and

**ORDERS** that the debt Defendant owes represented by the Oklahoma Judgment is excepted from discharge pursuant to § 523(a)(2) and § 523(a)(4).

**AND IT IS SO ORDERED.**

## JUDGMENT

Based upon the Findings of Fact and Conclusions of Law as recited in the attached Order of the Court, the Motion for Summary Judgment is granted and the debt John F. Swilley ("Debtor") owes as represented by the Journal Entry of Judgment entered by the United States District Court for the Western District of Oklahoma is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).

---

6. The Court also believes equitable estoppel or promissory estoppel may be additional principles that bar Defendant from disputing the agreed-upon facts supporting the determination that the debt represented by the Oklahoma Judgment is excepted from discharge.